IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF FINAU TAPUELUELU, et al., | No. C 04-01612 CRB |
| Plaintiffs, | **MEMORANDUM AND ORDER GRANTING SUMMARY JUDGMENT** |
| v. | |
| CITY AND COUNTY OF SAN FRANCISCO, et al., | |
| Defendants. | |

Plaintiffs, the estate of Finau Tapueluelu, his wife and minor children, brought this action under 42 U.S.C. section 1983 and state law against the City and County of San Francisco and certain individual officers of the San Francisco Sheriff's Department arising out of the events surrounding the death of Finau Tapueluelu ("decedent"). Now pending before the Court is defendants' motion for summary judgment. After carefully considering the briefing papers, and with the benefit of oral argument, the Court hereby GRANTS the motion as to the federal causes of action. The Court declines to invoke pendent jurisdiction on the state law causes of action, which are DISMISSED without prejudice.

**BACKGROUND**

**I.    Undisputed Facts**

On April 26, 2003, San Francisco Sheriff's Department officers responded to a call at the residence of decedent. Defendant Stephen Bucy arrived first and observed decedent standing on the outside ledge of a fifth-floor apartment building. After the arrival of

additional officers at the scene, defendant Bucy stayed below in an attempt to engage decedent in a conversation while defendants Westbrook, Cesari and Butherus ascended to decedent's apartment. In the apartment, the officers observed many broken items, scattered clothing and debris, and also suspected that decedent was under the influence of alcohol or narcotics. The officers soon discovered that decedent was suffering from an asthma attack and called an ambulance. Defendants Westbrook and Cesari placed decedent in handcuffs without incident and subsequently escorted him downstairs to wait for the ambulance in front of the building.

While waiting for the ambulance outside the building, an altercation developed between decedent and the officers. By all accounts, decedent became unruly and tried to pull away from the grasp of defendant Westbrook. Additional officers, most notably defendant Bucy, came to the assistance of defendant Westbrook during the struggle. Defendant Bucy performed a rear leg sweep to place decedent on the ground. After being placed on the ground, decedent continued to struggle and began to throw his head back, smashing it into the cement sidewalk. Defendant Westbrook assisted defendant Bucy in holding decedent to the ground to prevent him from further injuring himself. In addition, defendants Lyons, Tittel and Cesari attempted to gain control of decedent's lower body by tying a nylon strap around his legs to keep him from kicking.

While the officers were holding decedent on the ground, decedent stopped breathing. The officers rolled decedent onto his back and, after obtaining a face mask, defendant Bucy began performing CPR. The ambulance arrived shortly thereafter and the paramedics took over administering CPR. Yet all attempts to revive decedent were unsuccessful. The San Francisco Medical Examiner's Office found that decedent died of acute and sub acute bronchial asthma and ingestion of methamphetamine.

## II.   Procedural History

Plaintiffs filed an Amended Complaint on April 8, 2005, alleging several state law torts and claims under 42 U.S.C. section 1983 for violations of the Fourth and Fourteenth Amendments based on the use of excessive force on decedent against the individual officers

2

and the City under Monell. Plaintiffs filed a motion for partial summary judgment that was denied on July 15, 2005. Defendants now move for summary judgment as to all claims. Notably, defendants do not argue that qualified immunity applies to the individual officers.

## STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment bears the initial burden of demonstrating that there is an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). In applying this standard, the Court must construe all facts and reasonable inferences therefrom in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Diruzza v. County of Tehama, 323 F.3d 1147, 1152 (9th Cir. 2003).

A principle purpose of the summary judgment procedure is to isolate and dispose of factually unsupported claims. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). A party moving for summary judgment that does not have the ultimate burden of persuasion at trial has the initial burden of producing evidence negating an essential element of the non-moving party's claims *or* showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. See Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party has satisfied its initial burden of production, Rule 56(e) "requires the non-moving party to go beyond the pleadings and by affidavits or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. See Nissan Fire & Marine Ins. Co., 210 F.3d at 1102. A genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is

3

"material" only if it could affect the outcome of the suit under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

## DISCUSSION

**I.     Excessive Force by Individual Defendants**

  **A.     Legal Standard**

Plaintiffs' claim of excessive force arises under the Fourth and Fourteenth Amendments. Tennessee v. Garner, 471 U.S. 1, 8 (1985). A claim of excessive force is analyzed under the framework set forth by the Supreme Court in Graham v. Connor, 490 U.S. 386 (1989). The analysis requires balancing the "nature and quality of the intrusion" on the person's liberty with the "countervailing governmental interests at stake" to determine whether the use of force was objectively reasonable under the circumstances. Id. at 396. In Graham, the Supreme Court explained that the governmental interest must be examined in light of three factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Drummond ex rel. Drummond v. City of Anaheim, 343 F.3d 1052, 1057 (9th Cir. 2003) (quoting Graham, 490 U.S. at 396). This determination "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 1058 (quoting Graham, 490 U.S. at 396). Although it may be true that police officers "are often forced to make split-second judgments," and that therefore "not every push or shove, even if it may seem unnecessary in the peace of a judge's chambers" is a violation of the Fourth Amendment, id., it is also equally true that even where some force is justified, the amount actually used may be excessive. P.B. v. Koch, 96 F.3d 1298, 1303-04 (9th Cir. 1996).

  **B.     Analysis**

As a threshold matter, defendants have satisfied their burden of production by submitting a number of declarations and other supporting evidence illustrating that the behavior of the officers on the scene was reasonable under the circumstances. As best as the Court can decipher, plaintiffs' Memorandum in Opposition contends that defendants used

4

1  excessive force in executing a leg sweep to place decedent on the ground and by using a
2  "chicken wing" hold to keep him on the ground. Furthermore, plaintiffs' hinge Monell
3  liability on a finding that the City was "deliberately indifferent" in its failure to train its
4  officers on how to treat intoxicated individuals. See City of Canton v. Harris, 489 U.S. 378
5  (1989).[1] Of particular note, plaintiffs do not contest the propriety of handcuffing decedent or
6  of any activity that occurred prior to the leg sweep, nor do plaintiffs allege that the apartment
7  search or seizure of decedent was unreasonable. Plaintiffs' counsel conceded in open court
8  that the use of illegal drugs and breathing problems caused the death; nonetheless, plaintiffs
9  claim that defendants violated the Fourth Amendment by exacerbating decedent's situation
10 through the use of excessive force.

**1.  Defendant Bucy's Leg Sweep of the Decedent**

Defendants assert that defendant Bucy's decision to use a leg sweep to place decedent on the ground after a struggle began was reasonable as a matter of law. In this instance it is undisputed that decedent–who stood around five feet eight inches tall and weighed more than 200 pounds, and whom officers' suspected of being intoxicated and suicidal–began to struggle with the officers and refused to follow their instructions when defendant Bucy decided to place the decedent on the ground with a rear-leg sweep. Bucy Decl. ¶7. Defendant Bucy asserts that he was concerned that decedent would pose a danger to himself and potentially to others if he were to break the custody of the officers. Id. Plaintiffs also assert that defendant Bucy threw the decedent down to the ground face first, yet plaintiffs provide no supporting evidence to support that assertion.

The Ninth Circuit has noted that where an individual not under arrest poses a danger to himself or others, some force is justified in restraining that individual. See Drummond, 343 F.3d at 1059. Other courts have held that the use of force to restrain

---

[1] Plaintiffs also argue that defendants' failure to provide CPR violates the Fourth Amendment. To the extent that failure to provide CPR could violate the Constitution, it is only in the context of the Eighth Amendment or the Due Process Clause of the Fourteenth Amendment. See Maddox v. City of Los Angeles, 792, F.2d 1408, 1415 (9th Cir. 1986). Since there is no claim under the Eighth Amendment or Due Process Clause here, the Court finds they are improperly alleged and are thus disregarded.

5

erratic individuals also is reasonable as a matter of law.  See, e.g., Estate of Phillip v. City of Milwaukee, 123 F.3d 586, 592-93 (7th Cir. 1996) (holding that officers who brought a resisting individual to the ground by taking his legs out and then placing him in a prone position with his hands and legs restrained for the purpose of protecting the safety of others used reasonable force as a matter of law).

Here, the Court finds that it was similarly reasonable under the circumstances for defendant Bucy to bring the decedent to the ground with a leg sweep.  There is no dispute that a struggle was ongoing, that decedent was under the influence of a foreign substance, and that decedent could have injured himself or others if he broke free of the control of the officers.  Bucy Decl. ¶ 7.  In fact, decedent's behavior while on the ground–particularly his thrashing about and slamming his head on the ground–further supports the reasonableness of the officers' conduct.  Moreover, there is no admissible evidence in the record to support an assertion that he was violently brought to the ground.[2]   As a result, no reasonable juror could find that defendant Bucy's conduct in using the leg sweep to bring the decedent to the ground was unreasonable.

### 2.   Use of Force While Decedent was on the Ground

Plaintiffs' allegations of excessive force after the decedent was brought to the ground center primarily around assertions that defendant Bucy used a "chicken wing" hold to subdue decedent, which further exacerbated his breathing problems and assisted in causing his death.  Yet plaintiffs provide no admissible evidence supporting this assertion.  In fact, plaintiffs' Opposition concedes that the hold was never used.  See Pl. Opp. at 2.  Moreover, Bucy stated in his deposition that he never completed the hold.  See Bucy Depo. at 35:23-36:1.  The Court, therefore, has no occasion to address whether such a hold was unreasonable since

---

[2]To support such a proposition, plaintiffs attach a San Francisco Police Memorandum from Inspectors Johnson and D'Amico containing a summary of the statement of Tomas Rapisura.  Opp. at 4; Haynes Decl., Ex. 8.  This is inadmissible hearsay evidence and the Court does not consider it.

there is no evidence that it was applied.³ Moreover, plaintiffs do not dispute that the force used by the officers to subdue the decedent, particularly after he was slamming his own head against the concrete and attempting to kick the officers, was reasonable under the circumstances.

In this unfortunate situation, the officers responded to the erratic and unpredictable behavior of decedent in a reasonable manner. Their behavior, and any injuries that may have stemmed from their behavior, did not cause the death of the decedent. As plaintiffs' counsel acknowledged at oral argument, the decedent's own consumption of illegal narcotics combined with an asthma attack, perhaps exacerbated by his own decision to struggle with the attending officers, resulted in his untimely death. While his death was unfortunate indeed, it did not result from the unreasonable behavior of the officers on the scene, whom the evidence shows responded with reasonable force under the circumstances. Accordingly, the motion for summary judgment as to the individual defendants on this claim is GRANTED.

## II. Monell Claims

Plaintiffs cause of action under Monell v. Dept. of Social Services of City of New York, 436 U.S. 658 (1978), also fails. To establish municipal liability under Monell, courts must use a two-step process. Plaintiffs must first establish that the officers deprived them of a constitutional right. Los Angeles v. Heller, 475 U.S. 796, 799 (1986). Second, plaintiffs must show that an official city policy, custom or practice was the motivating force behind the constitutional injury. Monell, 475 U.S. at 694. The Court's finding above that the officers did not violate plaintiffs' Fourth Amendment rights also nullifies any Monell claim. Accordingly, the motion for summary judgment as to a claim against the City under Monell is GRANTED.

---

³Because there is no admissible evidence that any officer used a hold or maneuver that placed additional pressure on the decedent's chest or torso, plaintiffs' allegations that the officers' conduct was in violation of the San Francisco Police Manual are immaterial. The Manual states that when a individual is having trouble breathing certain actions acts may aggravate this impairment. Opp. at 3. But there is no evidence in the record that any such actions were taken.

7

**CONCLUSION**

For the foregoing reasons, the Court finds that the officers' conduct during this unfortunate incident was reasonable under the circumstances.  Accordingly, defendants' motion for summary judgment as to the federal constitutional claims arising under 42 U.S.C. section 1983 is GRANTED.  The Court hereby declines to exercise pendent jurisdiction on the state law claims.  Those claims are DISMISSED without prejudice to pursuing them in state court.

**IT IS SO ORDERED.**

Dated: March 7, 2006

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE